IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| LOTES CO., LTD., <br><br> Plaintiff and Counter-Defendant, <br><br> v. <br><br> HON HAI PRECISION INDUSTRY CO., LTD., and FOXCONN ELECTRONICS, INC., <br><br> Defendants and Counter-Claimants. | No. C 11-01036 WHA <br><br> **ORDER RE MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT AND FIRST AMENDED ANSWER TO COUNTERCLAIMS** |

## INTRODUCTION

In this action for patent infringement and breach of contract, plaintiff and counter-defendant moves for leave to file a third amended complaint and first amended answer to the patent owners' counterclaims. The motion is **GRANTED IN PART** and **DENIED IN PART**.

## STATEMENT

In March 2011, plaintiff Lotes Co., Ltd., brought this action against Hon Hai Precision Industry Co., Ltd., and Foxconn Electronics, Inc., seeking declaratory judgment of non-infringement or invalidity of various patents and asserting related claims arising out of alleged breaches of prior settlement and license agreements between the parties. The patent owners have answered and counterclaimed for patent infringement and breach of contract. Both parties have previously amended their pleadings.[1]

---

[1] Four patents currently in suit ("Licensed Patents") — 5,634,803 ("the '803 patent"), 6,340,309 ("the '309 patent"), 6,887,114 ("the '114 patent"), and 6,908,313 ("the '313 patent") — are subject to the license agreement between the parties. The other eight patents in suit ("Newly Asserted Patents") are 5,882,211 ("the '211 patent"), 6,113,398 ("the '398 patent"), 6,135,791 ("the '791 patent"), 6,530,798 ("the '798 patent"),

On Lotes's earlier motions, Judge Jeffrey White stayed this action since January 2012 pending the United States Patent and Trademark Office's reexamination of ten of the patents in suit. Lotes did not request reexamination of Licensed Patent '803 or Newly Asserted Patent '717. During the stay, the USPTO issued reexamination certificates cancelling all claims of Licensed Patents '309, '114, and '313 and Newly Asserted Patent '075; cancelling some claims of Newly Asserted Patents '211, '398, and '798; and allowing all claims of Newly Asserted Patent '791. Reexaminations of Newly Asserted Patents '353 and '316 remain pending.

In April 2016, this action was reassigned to the undersigned judge. Previous orders, noting that Lotes "has already had ample opportunity to challenge the patents before the USPTO" and made "successive reexamination requests," lifted the stay on August 19, 2016, over Lotes's objection (Dkt. No. 226) and gave both sides until November 30, 2016, to seek leave to add new parties or amend their pleadings (Dkt. No. 228).

**ANALYSIS**

On November 30, 2016, Lotes filed the instant motion seeking leave to amend its complaint and answer to the counterclaim in three ways. *First*, Lotes seeks to amend its complaint to reflect the outcomes of the eight reexaminations that concluded while the stay was in place. The patent owners do not oppose this (Dkt. No. 234 at 1). *Second*, Lotes seeks to amend its complaint to state that certificates issued as a result of the concluded reexaminations "[gave] rise to intervening rights," and amend its answer to the counterclaim to assert the affirmative defense of intervening rights. The patent owners oppose both proposed amendments (*id.* at 1–2 & n.1). *Third*, Lotes seeks to amend its answer to the counterclaim to assert an affirmative defense of "mediation privilege and confidentiality" (Dkt. No. 232 at 7). The patent owners also oppose this proposed amendment.

**1.    LEGAL STANDARD.**

Federal Rule of Civil Procedure 15(a)(2) advises, "The court should freely give leave when justice so requires." In assessing a motion for leave to amend, courts consider (1) bad

---

6,679,717 ("the '717 patent"), 6,905,353 ("the '353 patent"), 6,908,316 ("the '316 patent"), and 7,371,075 ("the '075 patent") (Dkt. No. 130 at 1–2).

2

1  faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment, and (5)
2  whether the plaintiff has previously amended their complaint. *Nunes v. Ashcroft*, 375 F.3d 805,
3  808 (9th Cir. 2003). Prejudice to the opposing party is the most important factor. *Eminence
4  Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Absent prejudice or a strong
5  showing of another factor, there is a presumption under Rule 15(a) in favor of granting leave to
6  amend. *Ibid.* Futility alone can justify denying leave to amend. *Nunes*, 375 F.3d at 808; *see
7  also Ebner v. Fresh, Inc.*, 838 F.3d 958, 968 (9th Cir. 2016). A district court's discretion to
8  deny leave to amend is particularly broad where the plaintiff has previously amended their
9  complaint. *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1072 (9th Cir. 2008).[2]

### 2. INTERVENING RIGHTS.

Lotes seeks to amend its answer to the counterclaim to add an intervening rights defense. Intervening rights "originated as a defense against patents modified through reissue procedures [but] has since been extended to the context of patent reexamination." *Marine Polymer Techs., Inc. v. HemCon, Inc.*, 672 F.3d 1350, 1362 (Fed. Cir. 2012). The Patent Act provides for two types of intervening rights. Absolute intervening rights "abrogate liability for infringing claims added to or modified from the original patent if the accused products were made or used before the reissue," and equitable intervening rights "apply as a matter of judicial discretion to mitigate liability for infringing such claims even as to products made or used after the reissue if the accused infringer made substantial preparations for the infringing activities prior to reissue." *See* 35 U.S.C. 252, 307(b); *Marine Polymer*, 672 F.3d at 1361–62.

Lotes can assert intervening rights as a defense against liability for infringement insofar as patents in suit now contain "claims added to or modified from the original patent" as a result of reexamination. The patent owners do not contend otherwise. Rather, they oppose on the bases that (1) Lotes unduly delayed in raising this defense, (2) Lotes had the opportunity to raise this defense in its second amended complaint, and (3) allowing Lotes to plead this defense now would prejudice the patent owners (Dkt. No. 234 at 4–5).

---

[2] The law of our circuit applies to "issues not unique to [the Federal Circuit's] jurisdiction, [such as] the decision to grant or deny leave to amend (when such amendment is not a matter of right)." *Cultor Corp. v. A.E. Staley Mfg. Co.*, 224 F.3d 1328, 1332 (Fed. Cir. 2000).

3

*First*, the patent owners claim "Lotes could have sought to assert this defense as early as February 28, 2012, when the first reexamination certificate with new and amended claims was issued" for the '316 patent (*id.* at 4). The '316 patent, however, subsequently underwent two more reexaminations. The second reexamination certificate amending and adding new claims issued on July 2, 2014, and while a third reexamination remains pending, a final rejection of all claims issued on August 26, 2016 (Dkt. No. 232 at 3). In other words, Lotes did not merely sit on its hands since February 2012 but spent that time convincing the USPTO to reject the '316 patent in its entirety. Cancellation of that patent's claims would have extinguished any pending litigation based on those claims and thus obviated any need to assert intervening rights. *See Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330, 1336–40 (Fed. Cir. 2013). Moreover, given that this action became stayed due to multiple reexamination proceedings, it would have been unnecessary and premature for Lotes to move to lift the stay and amend its pleadings as soon as each reexamination concluded.

*Second*, the patent owners represent that their second amended counterclaim on June 20, 2013 (Dkt. No. 133), and Lotes's answer thereto on July 11, 2013 (Dkt. No. 140), "were authorized specifically to address the events that had transpired since Lotes' original answer, which included the issuance of reexamination certificates bearing new and amended patent claims, [but] Lotes chose to make no mention of intervening rights" in that answer even though "reexamination certificates for every patent-in-suit that underwent amendment or obtained additional claims had already issued by that date" (Dkt. No. 234 at 5). The patent owners' phraseology suggests Judge White permitted the parties to amend their pleadings despite the stay specifically to address the outcomes of concluded reexaminations, and that the full scope of any intervening rights Lotes had was apparent by July 11, 2013. Neither suggestion is accurate.

The "authorization" for the amended pleadings that the patent owners refer to was Judge White's approval of a stipulation and proposed order submitted by the parties. That stipulation stated simply, "Events have transpired since the inception of this action that have given rise to the need for the Parties to amend their respective pleadings, as reflected in the proposed amended pleadings attached hereto" (Dkt. Nos. 128, 129). In their second amended answer and

4

counterclaim filed on June 20, 2013, the patent owners added allegations describing various "[e]vents [that] transpired since the inception of this action" — including enforcement and mediation proceedings in China and Taiwan and new reexamination requests filed by Lotes (Dkt. No. 133 at 5–6). Yet that same filing — despite asserting infringement counterclaims for, among others, patents '316, '353, and '075, each of which the patent owners described as "valid and enforceable . . . as duly issued by the USPTO" (Dkt. No. 133 at 18–19) — failed to mention that reexamination certificates cancelling, amending, or adding new claims to the '316, '353, '075, '211, and '398 patents had already issued by then. In other words, the patent owners apparently did not consider the reexamination certificates issued up to that point "[e]vents [that] transpired" necessitating amendments to their own answer and counterclaim. Nonetheless, they now contend that because those certificates constituted "events that had transpired since Lotes' original answer," Lotes should have used them to assert intervening rights in its prior answer to the counterclaim (Dkt. No. 234 at 5). This lopsided theory carries little weight.

The patent owners point out that "reexamination certificates with new or amended claims issued in 2012 for the '316 patent, '353 patent, '211 patent, and '398 patent" (*ibid.*). True, as of July 11, 2013, reexamination certificates with new or amended claims had issued for patents '211 and '398, and no further reexamination occurred as to those patents. For patents '316 and '353, however, although the first reexamination certificates issued in 2012, they were followed by multiple additional reexaminations. As stated, patent '316 is still undergoing its third reexamination, wherein a final rejection of all claims issued on August 26, 2016. And patent '353 is still undergoing its fourth reexamination, wherein a non-final rejection of all claims issued on November 8, 2016. Additionally, as of July 11, 2013, new claims were still being added in numerous other reexaminations of patents in suit. The multitude of asserted patents and new claims created a moving target such that the actual constellation of claims that would go to trial, and the full scope of Lotes's intervening rights, remained unclear. Under such circumstances, it was not unreasonable for Lotes to postpone asserting its intervening rights defense until the landscape of patents in suit solidified.

5

*Third*, the patent owners claim they would be "significantly prejudiced if Lotes is permitted to add an intervening rights defense" because they "reasonably understood from Lotes' years of non-assertion that intervening rights would not be an issue in this case." Otherwise, the patent owners claim, they "could have adjusted [their] conduct accordingly, for example by asserting additional patents that had not been subject to reexamination" (*ibid.*). This reasoning is baffling. If the patent owners wanted and were able to assert additional patents against Lotes, they had years to do so — including the same time that Lotes had between August 19, 2016, and November 30, 2016, to seek leave to amend pleadings after the stay lifted. Plus, Lotes could and likely would have also requested reexamination of any additional patents asserted. At best, the patent owners' suggestion describes a cyclical litigation strategy, *i.e.*, they would continue asserting additional patents to circumvent intervening rights defenses and Lotes would continue requesting reexaminations of those patents. This is untenable. Both sides had more than adequate opportunity to amend their pleadings, and the patent owners have only themselves to blame if they could have asserted additional patents but did not.

In short, the *Nunes* factors weigh in favor of granting Lotes leave to amend to plead an intervening rights defense. This record does not support finding that Lotes acted in bad faith, and the patent owners do not contend the proposed amendment would be futile. Nor would the proposed amendment significantly prejudice the patent owners. Under these circumstances, neither undue delay nor the fact that Lotes has previously amended its pleadings outweighs the presumption in favor of granting leave to amend. *See Eminence Capital*, 316 F.3d at 1052.

**3.    MEDIATION PRIVILEGE AND CONFIDENTIALITY.**

Lotes also seeks to amend its pleadings to add "the defense of mediation privilege and confidentiality." Lotes vaguely asserts — without citing any part of the counterclaim — that the patent owners allege "Lotes breached the Settlement Agreement and Patent License Agreement by its alleged conduct in mediation and by allegedly not fully complying with mediation obligations under those agreements" (Dkt. No. 232 at 7–8). Based on this characterization of the counterclaim, Lotes contends its "mediation conduct is privileged or

6

protected under California Civil Code section 47(b), California Evidence Code section 1126, 28 U.S.C. § 652, Rule 6-12 of the ADR Local Rules of [this district], and California and federal common law" (*id.* at 8). The patent owners respond that leave to amend should be denied as futile because none of those authorities supports Lotes's position (Dkt. No. 234 at 6). This order agrees.

As a preliminary matter, Lotes mischaracterizes the patent owners' allegations. In its reply brief, Lotes cites paragraph 37 of the counterclaim for the proposition that the patent owners "seek to assert claims based on communications made in the course of mediation proceedings" (Dkt. No. 237 at 8, 10). But actual allegations from the counterclaim, quoted in full below, tell a different story (Dkt. No. 133 at 15–17) (emphasis added):

> 26. In addition, the Settlement Agreement contains procedures for resolving future disputes. The Parties agreed to send notice of any potential claims to the other party, and upon receipt of such notice, to attempt, in good faith, to resolve any such claim(s). Only if the alternative dispute procedures in the License Agreement were unsuccessful were the Parties allowed to file suit in Court.
>
> 27. Notwithstanding the Settlement Agreement, Lotes filed its invalidation proceedings in Taiwan and reexamination requests in the U.S. *without attempting* in good faith to resolve such claims with Counterclaimants or *to mediate such claims*.
>
> 28. Lotes also filed the current declaratory judgment action, including its claims relating to the Newly Asserted Patents, without complying with its pre-filing obligations under the Settlement Agreement.
>
> . . .
>
> 35. Pursuant to Section 8 of the License Agreement, the Parties agreed to follow specific procedures for resolving any dispute between the Parties relating to infringement.
>
> 36. Lotes filed its Complaint without complying with the specific guidelines for dispute resolution agreed to in Section 8 of the License Agreement. *Various claims asserted in the Complaint were not the subject of mediation as required by the License Agreement* before relief was sought from this court.
>
> 37. Lotes' conduct during the *attempts* to mediate claims regarding the Newly Asserted Patents and with respect to the Audit shortfall similarly constitute a breach of Lotes' obligations under the License Agreement.

7

The thrust of these allegations is that the settlement and license agreements required Lotes to participate in mediation as to some of its claims, *but Lotes did not do so*. In other words, the allegations pertain not to Lotes's conduct during any mediation but rather to Lotes's refusal to participate in mediation at all. This detail, oddly absent from both sides' briefs, bears on the analysis that follows.

### 1. California Civil Code.

Section 47(b) of the California Civil Code codifies California's litigation privilege and renders privileged any "publication or broadcast" made in a "legislative proceeding," "judicial proceeding," or "other proceeding authorized by law," with some exceptions not relevant here. California courts have extended the litigation privilege to formal mediation proceedings to which the parties consented as an alternative to trial. *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 264 (9th Cir. 2013). It has no application here for several reasons.

*First*, as stated, the counterclaim is not based on Lotes's conduct in any mediation. *Second*, noncommunicative conduct is not privileged under Section 47(b) anyway, *see Kimmel v. Goland*, 51 Cal. 3d 202, 211–12 (1990), and Lotes's bald assertion that "all 'conduct' in the course of a mediation is necessarily communicative" (Dkt. No. 237 at 10) is flat-out wrong. *See, e.g.*, *Doublevision Entm't, LLC v. Navigators Specialty Ins. Co.*, No. C 14-02848 WHA, 2015 WL 370111, at *2 (N.D. Cal. Jan. 28, 2015); *Atmel Corp. v. St. Paul Fire & Marine Ins. Co.*, 421 F. Supp. 2d 1265, 1271–72 (N.D. Cal. Mar. 21, 2006) (Judge Susan Illston). *Third*, whether Section 47(b) applies to an action for breach of contract turns on whether its application furthers the policies underlying the privilege. *Wentland v. Wass*, 126 Cal. App. 4th 1484, 1492 (2005); *see also Stacy & Witbeck, Inc. v. City & Cty. of San Francisco*, 47 Cal. App. 4th 1, 8 (1996) ("The litigation privilege was never meant to spin out from judicial action a party's performance and course of conduct under a contract."). Thus, Section 47(b) did not apply in *Wentland* because the breach in question was "not simply a communication, but also wrongful conduct or performance under the contract," and "application of the privilege would frustrate the purpose of the . . . agreement" but "not serve to promote access to the courts, truthful testimony or zealous advocacy." *Wentland*, 126 Cal. App. 4th at 1494. So too here.

8

### 2. California Evidence Code.

Though Lotes relies in its motion on Section 1126 of the California Evidence Code, it shifts ground in its reply brief to Sections 1115–1128 after the patent owners correctly point out that Section 1126 says nothing about the actual scope of California's mediation privilege, but merely continues the privilege's protection after mediation ends (Dkt. Nos. 234 at 7, 237 at 8). Like the litigation privilege, the mediation privilege is inapplicable here because, as stated, the patent owners' breach of contract counterclaim is based on allegations that Lotes *did not participate in mediation*, not on allegations of events "in the course of, or pursuant to, a mediation or a mediation consultation." *See* CAL. EVID. CODE §§ 1115, 1117, 1119. Moreover, even if, as this action moves forward, the patent owners were to seek admission or discovery of some evidence barred by the California Evidence Code, the proper way to raise such issues would be via evidentiary objections, not affirmative defenses (*see* Dkt. No. 234 at 8).

### 3. 28 U.S.C. 652 and Local Rule 6-12 for Alternative Dispute Resolution.

Section 652(d) of Title 28 of the United States Code requires district courts to adopt local rules providing "for the confidentiality of the alternative dispute resolution processes" and prohibiting "disclosure of confidential dispute resolution communications." Local Rule 6-12 for Alternative Dispute Resolution in this district provides that, with limited exceptions, "this court, the mediator, all counsel and parties, and any other persons attending the mediation shall treat as 'confidential information' the contents of the written Mediation Statements, anything that was said, any position taken, and any view of the merits of the case expressed by any participant in connection with any mediation." This rule, which protects mediation, is inapplicable here because, as stated, the patent owners' breach of contract counterclaim is based on allegations that Lotes did *not* participate in mediation.

### 4. California and Federal Common Law.

Lotes's motion neither clarifies what it means by "California and federal common law" nor explains how that sweeping invocation supports its position. Lotes's reply brief makes no further mention of any "common law." In turn, this order does not consider this point further.

9

In short, it would be both unnecessary and futile for Lotes to amend its pleadings to add an affirmative defense of mediation privilege. *See Nunes*, 375 F.3d at 808 (futility alone can justify denial of leave to amend). Lotes is not entitled to enjoy a privilege applicable only to proceedings that Lotes did not participate in. And in any case, any potential application of the privilege should be raised as an evidentiary matter rather than an affirmative defense.

Moreover, undue delay weighs strongly against granting leave to amend here because, unlike Lotes's intervening rights defense — which evolved alongside reexaminations of several patents in suit during the stay of this action — any mediation privilege "defense" Lotes could assert should have been included in its pleadings long ago. The patent owners' first answer and counterclaim filed on April 28, 2011, already contained the allegations that supposedly trigger the privilege (Dkt. No. 19). Lotes had no good reason to dawdle for almost six years before attempting to add this purported affirmative defense. *See Nunes*, 375 F.3d at 808 (courts consider undue delay in assessing the propriety of a motion for leave to amend). Lotes's only arguments to the contrary are that California's mediation privilege must be expressly waived, and in any case the patent owners had "notice of Lotes' intended reliance on the mediation privilege" because Lotes had previously asserted it in response to discovery requests (Dkt. No. 237 at 10). As stated, Lotes remains free to assert the mediation privilege properly in the evidentiary context as this action moves forward, but its arguments do not change the fact that it is irredeemably late in attempting to plead the mediation privilege as an affirmative defense.

## CONCLUSION

For the foregoing reasons, leave is **GRANTED** for Lotes to amend its complaint to reflect the outcomes of concluded reexaminations of patents in suit, and to amend its answer to the counterclaim to assert the defense of intervening rights. Leave is **DENIED** for Lotes to amend its answer to assert a defense of mediation privilege. Lotes shall please file its amended pleadings in conformity with this order (*i.e.*, adding no new material) by **JANUARY 30 AT NOON**.

**IT IS SO ORDERED.**

Dated: January 23, 2017.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

10