IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

LOTES CO., LTD.,

    Plaintiff,

  v.

HON HAI PRECISION INDUSTRY CO., LTD., and FOXCONN ELECTRONICS, INC.,

    Defendants.

No. C 11-01036 WHA

**ORDER RE MOTION TO STRIKE PORTIONS OF VIJAY GUPTA'S EXPERT REPORTS**

**INTRODUCTION**

In this action for declaratory judgment of patent noninfringement, the patent owners move to strike portions of plaintiff's expert reports as untimely and in violation of our Patent Local Rules. The motion is **GRANTED IN PART** and **DENIED IN PART**.

**STATEMENT**

The factual and procedural background of this action has been described in prior orders (Dkt. Nos. 226, 244) and need not be repeated here. By this motion, patent owners Hon Hai Precision Industry Co., Ltd., and Foxconn Electronics, Inc., seek to strike portions of the expert reports of Dr. Vijay Gupta opining that (1) U.S. Patent No. 6,135,791 ("the '791 patent") is invalid due to non-enablement, (2) U.S. Patent No. 6,905,353 ("the '353 patent") is invalid due to indefiniteness, and (3) plaintiff Lotes Co., Ltd., does not infringe U.S. Patent No. 6,908,316 ("the '316 patent). This order summarizes only background relevant to this motion.

The '791 patent discloses "[a] method for achieving uniform expansion of a dielectric plate made by injection molding" by placing rhombic core pins at specific positions inside the mold to guide the flow of plasticized dielectric material during the injection-molding process, such that the resulting "properly oriented molecules of the dielectric material and the rhombic holes reduce the difference between thermal expansion coefficients in longitudinal and lateral directions of the plate." Claim 1 of the '791 patent encompasses a pattern of holes in the plate that has "been determined empirically to reduce, both by arrangement of said plurality of holes in the finished base plate and by promotion of said regular arrangement of molecules during the injection molding process, a difference between thermal expansion coefficients of the base plate in first and second directions substantially normal to each other" (Dkt. No. 248-10).

In its invalidity contentions Lotes argued, among other things, that "[a] person of ordinary skill in the art would not be able to practice the above claim limitation without undue experimentation" because "the specification . . . fails to enable any patterns of holes beyond the particular pattern of holes shown in Figures 1 and 2 of the patent," which "discloses only a starting point for further iterative research and is silent as to other patterns of holes that might achieve the claimed reduction" of the difference between thermal expansion coefficients (Dkt. No. 363-2 at 30–31). In his opening report, Dr. Gupta opined that the '791 patent is invalid due to non-enablement, in part because "the nature of the alleged invention is such that changes in the thermal expansion coefficients can be hard to predict, depending upon the mold processing parameters and mold geometry" (Dkt. No. 363-4 ¶¶ 311-24). The patent owners protest that this part of Dr. Gupta's opinion constituted a new non-enablement theory never disclosed in Lotes's invalidity contentions (Dkt. No. 363 at 3).

The '353 patent — which remains under reexamination before the United States Patent and Trademark Office at Lotes's request (*see* Dkt. No. 378 at 16) — discloses an electrical connector assembly with an attached "pick up cap" that protects, but does not touch, electrical contacts protruding from the connector's insulative housing, and has a smooth top surface for vacuum suction placement (Dkt. No. 248-12). In relevant part, claims 16, 33, 35, 46, 68, 70, 81, 103, 105, and 116 all require that the "undersurface" of the "pick up cap" be spaced from the

insulative housing with an unspecified "distance which is slightly larger than" the distance by which the electrical contacts protrude from the insulative housing. Lotes's invalidity contentions never discussed this "slightly larger" phrase. In his opening report, however, Dr. Gupta opined in relevant part that the aforementioned claims of the '353 patent are invalid due to the indefiniteness of the "slightly larger" phrase (Dkt. No. 363-4 ¶¶ 1851–52).

The '316 patent, like the '353 patent, concerns electrical connectors. In relevant part, claims 20, 22, and 40 of the '316 patent all require "a substantially rectangular cavity in the support area, the cavity being bounded by a floor and a plurality of peripheral side walls" (Dkt. No. 248-9). Pursuant to Patent Local Rule 4, Lotes previously proposed that this limitation means "the floor and the side walls form the outer boundary of the cavity" while the patent owners previously proposed that it be construed according to its plain and ordinary meaning (Dkt. No. 238-2 at 20–21). In his rebuttal report, Dr. Gupta opined that Lotes does not infringe the aforementioned claims because the side walls of the accused products are not continuous but have "breaks" in them such that the cavities in question are not "bounded" by the side walls (Dkt. No. 362-3 ¶¶ 227–29, 246–48, 264–66, 280–82, 298–99, 316–18).

The patent owners move to strike the three aforementioned opinions of Dr. Gupta (and to exclude Lotes's arguments relating thereto) as supposedly revealing new invalidity contentions and a claim construction theory at odds with Lotes's disclosures under our Patent Local Rules. This order follows full briefing and oral argument.

**ANALYSIS**

1. **LEGAL STANDARD.**

Our Patent Local Rules require parties to disclose infringement and invalidity contentions early in the litigation and with specificity, and restrict the ability of parties to amend those contentions, to balance the right to develop new information in discovery with the need for certainty as to legal theories in the case. *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1359–60, 1366 (Fed. Cir. 2006). A party cannot use its contentions as a placeholder to generally assert infringement or invalidity theories and then later clarify the exact infringement or invalidity theory through an expert report. *See ASUS Comput. Int'l v.*

1  *Round Rock Research, LLC*, No. 12–cv–02099 JST (NC), 2014 WL 1463609, at *3 (N.D. Cal.
2  Apr. 11, 2014) (Judge Nathanael Cousins) (citation omitted).  Similarly, "[w]hile no provision
3  of the Patent Local Rules explicitly forbids a party from shifting its claim construction position,
4  the rules strongly suggest that a party is not supposed to do so." *Rambus Inc. v. Hynix*
5  *Semiconductor Inc.*, 569 F. Supp. 2d 946, 980 (N.D. Cal. July 10, 2008) (Judge Ronald Whyte).

### 2. DR. GUPTA'S OPINIONS RE THE '791 PATENT.

Dr. Gupta dedicates a section of his opening report to opining that the '791 patent is invalid due to non-enablement.  Under this section, the first subsection is titled, "A Person of Ordinary Skill Would Have to Conduct Undue Experimentation to Determine Whether a Hole Pattern Other Than the Figure 2 Hole Pattern Would Achieve the Claimed Reduction" (Dkt. No. 378-2 at 98).  Most of the analysis thereunder closely tracks and fleshes out the invalidity theory Lotes had disclosed in its invalidity contentions (*see id.* ¶¶ 302–11).  For example, Dr. Gupta explains that "a person of ordinary skill in the art would have to create many different iterations of base plates having different arrangements of holes to see which arrangements would reduce thermal expansion coefficient mismatches of the base plates.  This would involve substantial experimentation," since "many other parameters of the holes could affect the coefficients of thermal expansion of the base plate," but the '791 patent provided no guidance "as to how these parameters should be set . . . other than what is shown in Figure 2" (*id.* ¶ 306).

In the same subsection, however, Dr. Gupta also noted that the hole pattern would not be the only factor affecting the thermal expansion coefficients.  "A person having ordinary skill in the art would have expected that many other injection molding parameters would have at least as great of an impact (or greater) on the thermal expansion coefficients," but "[t]he '791 patent fails to discuss how <u>any</u> of these parameters could be tuned in combination with the selection of a particular hole pattern to achieve a reduction in the difference between thermal expansion coefficients" (*id.* ¶ 307).  Thus, "for each hole pattern, the person of ordinary skill would have to conduct many tests to ascertain whether other injection molding parameters . . . affect the difference of thermal expansion coefficients," thereby exacerbating the need for "undue experimentation" to figure out whether a particular hole pattern would work (*id.* ¶ 308).

The second subsection to Dr. Gupta's opinion regarding non-enablement in the '791 patent, titled "Significance of Mold Processing Parameters and Geometry," is a detailed explanation of how various injection-molding variables can also affect the thermal expansion coefficients in the plate (*id.* ¶¶ 312–24). The patent owners contend this explanation exceeds the non-enablement theory disclosed by Lotes's invalidity contentions. This order agrees.

In its invalidity contentions, Lotes had argued that the '791 patent failed to "enable any patterns of holes beyond the particular pattern of holes shown in Figures 1 and 2," such that "[a] person of ordinary skill in the art would need to undertake undue experimentation to determine whether any other patterns of holes achieve the claimed reduction of the difference between thermal expansion coefficients" (Dkt. No. 363-2 at 31). This non-enablement theory focused on the '791 patent's lack of guidance specifically as to other *hole patterns*, not as to any and every other variable in the injection-molding process that might affect the thermal expansion coefficients of the plate. Tellingly, Dr. Gupta specifically stated that "other injection molding parameters would have *at least as great of an impact (or greater)* on the thermal expansion coefficients" as the "particular pattern" of holes (Dkt. No. 378-2 ¶ 307 (emphasis added)). Moreover, contrary to Lotes's invalidity contentions — which suggested that the '791 patent at least enabled its claimed invention with respect to the specific hole pattern described in figures 1 and 2 — Dr. Gupta indicated that the variability of other "mold processing parameters and geometry" remains so significant that "it is impossible to know whether the particular pattern of holes shown in Figure 2 even works for the mold geometry shown" (*see id.* ¶ 317). In short, Dr. Gupta's analysis indicated that both hole patterns and the other "mold processing parameters and geometry" can independently affect the thermal expansion coefficients of the plate.

Dr. Gupta's analysis regarding "mold processing parameters and geometry" may therefore be subsumed within a broader theory that the '791 patent never actually enabled any achievement of its purported benefit of *reducing the difference between thermal expansion coefficients*. This is consistent with his opinion that "*the nature of the alleged invention* is such that changes in the thermal expansion coefficients can be hard to predict, depending upon the mold processing parameters and mold geometry." Indeed, it seems the hole patterns might be

5

characterized as a subset of the "mold processing parameters and geometry" that Dr. Gupta discussed (*see id.* ¶¶ 311, 314–16 (emphasis added)). It does not follow, however, that the entire array of "mold processing parameters and geometry" can be characterized as a subset of hole patterns such that it was fair game in light of Lotes's invalidity contentions.

By disclosing only a non-enablement theory based on the *specific* variable of hole patterns, Lotes did not give its adversaries fair notice that its expert would opine about a host of *other* variables that would supposedly foil the '791 patent's overall attempt to enable a method for reducing the difference in thermal expansion coefficients. Dr. Gupta's analysis about how injection-molding variables *other than* hole patterns render the '791 patent invalid due to non-enablement is therefore **STRICKEN**. This ruling is without prejudice to the possibility that the patent owners themselves might open the door to this subject at trial, in which case Dr. Gupta's opinion on the same subject would become fair game.

### 3. DR. GUPTA'S OPINIONS RE THE '353 PATENT.

As stated, Lotes's invalidity contentions never disclosed the theory that ten claims of the '353 patent are invalid due to the indefiniteness of the "slightly larger" phrase. In its opposition to the instant motion, Lotes points out that the patent owners amended those claims during reexamination to recite two new limitations. "The new limitations require that the pick up cap be '*layered below a clip engaged on the housing assembly and above a bottom surface of the housing assembly*,' and require[] 'a moveable fastening device attached to the housing assembly that is pivotable from an open position to a closed position and *defining an opening at a center point of the moveable fastening device*'" (Dkt. No. 378 at 16–17 (emphasis in original)). Based on this, Lotes contends, "Dr. Gupta may . . . reasonably conclude that the 'layered below' amendment changes the claimed spatial relationship between the pick up cap and the electrical contacts such that the 'slightly larger' claim limitation becomes ambiguous." Thus, according to Lotes, Dr. Gupta's indefiniteness argument "could not have been disclosed" earlier "because [the patent owners] did not make the related 'layered below' and 'center point' amendments until days before Dr. Gupta served his expert report" (Dkt. No. 378 at 18–19).

6

Lotes offers no explanation whatsoever for how the new limitations could render the "slightly larger" phrase indefinite if it was not indefinite before. Nor did Dr. Gupta. On the contrary, Dr. Gupta explicitly opined in his report that the phrase "slightly larger" is simply a relative term, and that the '353 patent is invalid for indefiniteness because it "does not provide any standard from which a person having ordinary skill in the art could reasonably determine when one distance is 'slightly larger' than another distance" (Dkt. No. 378-2 ¶¶ 1851–52). According to Dr. Gupta's own analysis, the supposed indefiniteness, if it exists at all, plainly inheres in the "slightly larger" phrase itself and not as a result of any new limitation recently added by the patent owners. Lotes's argument to the contrary is disingenuous.

The new limitations do not excuse Lotes's attempt to introduce a new invalidity theory in Dr. Gupta's report despite having never disclosed said theory in its invalidity contentions. Dr. Gupta's analysis regarding how the "slightly larger" phrase renders the '353 patent invalid due to indefiniteness is therefore **STRICKEN**. Again, this ruling is without prejudice to the possibility that the patent owners themselves might open the door to this subject at trial, in which case Dr. Gupta's opinion on the same subject would become fair game.

**4.   DR. GUPTA'S OPINIONS RE THE '316 PATENT.**

Dr. Gupta opined in his rebuttal report that Lotes does not infringe claims 20, 22, and 40 of the '316 patent because those claims require "a substantially rectangular cavity in the support area, the cavity being bounded by a floor and a plurality of peripheral side walls," whereas Lotes's accused products are not continuous but have "breaks" in them (Dkt. No. 362-3 ¶¶ 227–29, 246–48, 264–66, 280–82, 298–99, 316–18). The patent owners protest that this argument constitutes "a new construction for this term that differs from the construction Lotes has advanced throughout the claim construction proceedings" (Dkt. No. 363 at 10). Since Lotes's proposed construction has been that "the floor and the side walls form the outer boundary of the cavity" (Dkt. No. 238-2 at 20–21), the patent owners' true argument seems to be that the word "boundary," as used in Lotes's proposed construction, inherently cannot indicate a continuity requirement.

The patent owners' argument is unpersuasive insofar as they suggest Lotes cannot explain why its products do not infringe unless it limits itself to terminology specifically invoked in its proposed claim construction (*see, e.g.*, Dkt. Nos. 363 at 14). Penalizing Lotes on the basis that its proposed claim construction was "not necessarily [as] narrow" as its substantive arguments, as the patent owners suggest, would be particularly unfair here given that the patent owners proffered only "plain and ordinary meaning" for their proposed claim construction but have not been shy about elaborating on their opinions about what that simple phrase actually means in this case (*see, e.g.*, Dkt. No. 385 at 14). It is not up to the patent owners to determine the proper meaning of either the disputed term or the parties' proposed constructions thereof, and it is not clear that Dr. Gupta's noninfringement argument is inconsistent in any significant way with Lotes's proposed claim construction.

Even if there has been some unexpected narrowing of Lotes's proposed claim construction, the patent owners have not shown that striking is warranted here. Indeed, their primary authority for this point, *Rambus*, is to the contrary. In *Rambus*, Judge Whyte agreed that the defendants had shifted their claim construction position after the parties filed their joint claim construction statement but noted that the jurisprudence of our district did not instruct on how to remedy that shift. 569 F. Supp. 2d at 979–81. He explicitly disapproved of the defendants' conduct but rejected the plaintiff's proposed remedy of striking the defendants' claim construction brief because it was "too harsh" and he was unwilling to ignore arguments that "help the court to construe the claims in dispute." *Id.* at 981. In short, contrary to the patent owners, *Rambus* does not support the relief they seek here.

Insofar as this dispute has strayed into claim construction territory — for example, whether a cavity can be "bounded" by discontinuous walls with breaks in them — the parties' arguments are better reserved for resolution on the merits. If the patent owners ultimately succeed in arguing that the claims in question should be construed to include discontinuous walls with breaks in them, then they may prevail on infringement notwithstanding what Dr. Gupta has said about the meaning of Lotes's proposed claim construction. In the meantime, their motion to strike Dr. Gupta's opinion as to this subject is **DENIED**.

8

**CONCLUSION**

To the extent stated herein, the patent owners' motion to strike is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS SO ORDERED.**

Dated: November 11, 2017.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE